**James Acres**

1106 2nd #123

Encinitas, CA 92024

james@acresbonusing.com

james@kosumi.com

541 760 7503 (mobile)

*In Pro Per*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CV 16 5391 LB

| | |
|---|---|
| JAMES ACRES,<br><br>Plaintiff,<br><br>v.<br><br>BLUE LAKE RANCHERIA, and its TRIBAL COURT, through its Chief Judge LESTER MARSTON, in his individual and official capacities.<br><br>Defendant | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Case No:_____ |

### INTRODUCTION

1. This case is related to 3:16-cv-02622-WHO, in which I sought declaratory relief and injunctive relief against the Blue Lake Rancheria's assertion of adjudicatorial jurisdiction over me in an underlying tribal action in which the tribe itself was suing me in its tribal court.

2.  Judge Orrick dismissed that action for need to exhaust tribal remedies, in part because the tribal court's behavior was not "so outrageous as for them to lose jurisdiction." *3:16-cv-02622-WHO*, Dkt. 47 p 3 lines 1 – 5.

3.  Subsequent to Judge Orrick's decision *(Id.,* Dkt. 48) I made several filings in tribal court. One of these filings was a motion to disqualify Defendant Marston from presiding over the tribal action.

4.  On Friday, September 9th, 2016, Defendant Marston refused to disqualify himself from the tribal action.

5.  Concurrent with his role as tribal judge, Marston continues in private practice as an attorney at the law firm of Rapport and Marston.

6.  Since 2011, Rapport and Marston has acted as plaintiff's attorney in *Blue Lake Rancheria v Lanier.*[1] This case is pending in the United States District Court for Eastern California, and in the United States Court of Appeals for the Ninth Circuit. More than $18,000,000 is at issue in *Blue Lake v Lanier*.

7.  Blue Lake Rancheria is plaintiff against me in the underlying tribal action.

8.  Since the Blue Lake Rancheria is currently a client of Marston's law firm, Marston's decision to remain as presiding judge over a case in which the Blue Lake Rancheria is also the plaintiff is an act of bad-faith so outrageous as to allow this Court to strip the tribal court of jurisdiction.

---

[1] Initially styled *Blue Lake v Morgenstern,* it's basically *Blue Lake v California,* an $18m tax dispute.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 USC 1331 as the limits of tribal jurisdiction is a federal question. *Elliott v White Mountain Apache Tribal Court,* 566 F.3d 842, 846 (9th Cir. 2009).

10. Venue is proper in the Northern District as the Blue Lake Rancheria is in Humboldt County, California.

11. Intradistrict Assignment is proper to the San Francisco Division as assignment to Judge Orrick under Civil L.R. 3-3(c) seems likely.

## PARTIES

12. I am James Acres, the plaintiff in this action. I am an adult residing in San Diego County, California. I am named as a defendant in the underlying tribal action, Blue Lake Rancheria Tribal Court case # C-15-1215LJM, where it is alleged I fraudulently induced the Blue Lake Rancheria to enter a contract with my employer. *Exhibit 1,* Underlying Tribal Complaint, p 6.

13. Defendant Lester Marston is the presiding judge in the underlying tribal action, as well as the Chief Judge of the Blue Lake Rancheria Tribal Court.

14. Marston is also an attorney in active private practice at the law firm of Rapport and Marston. Concurrent with Marston's work as presiding judge in the underlying tribal action, Rapport and Marston represents Blue Lake Rancheria in *Blue Lake v Lanier,* 2:11-cv-01124-JAM-KJN.

///
///

# GENERAL ALLEGATIONS

*A: About Montana and the tribal exhaustion doctrine*

15. While tribal jurisdiction over non-members is a federal question, a tradition of comity typically requires the exhaustion of all tribal remedies before resorting to federal court. *Elliot v White Mountain Apache Tribal Court,* 566 F.3d 842, 846 (9th Cir. 2009). However, tribal exhaustion is not required when a tribal court is conducting the underlying action in bad-faith. *Id.*

16. Tribal jurisdiction over non-Members is governed by the "Montana Rule" set forth in *Montana v United States*, 450 US 544 (1981).

17. The general rule in *Montana* is that tribe's don't have authority over non-Members. *Id.,* at 565.

18. There are two exceptions to the Montana rule which allow tribes to assert jurisdiction over non-Members. These exceptions are to be narrowly construed, lest they "swallow the rule," or "severely shrink it." *Plains Commerce Bank v Long Family,* 554 US 316, 330 (2008).

19. My case does not fit within the *Montana* exceptions because I never consented to tribal jurisdiction, because the tribal complaint doesn't allege I was even on the reservation when the alleged fraud was allegedly committed, because the alleged fraud never happened, and because I never posed a threat to the tribe, or its ability to govern itself.

20. This Court has previously ruled that a colorable claim to tribal jurisdiction exists, and so I first address recent acts of bad faith by the tribal court.

Once bad faith is established, we can move on to detailed wrangling over the application of *Montana* to my case.

*B: About the September 9th, 2016 tribal court hearing*

21. In late July 2016, after Judge Orrick indicated his inclination towards dismissal of my first federal suit, I made several tribal court filings in the underlying tribal action. These included an answer, a motion for judgment on the pleadings, and a motion to disqualify Marston as presiding judge.

22. A hearing on both motions was held at 1pm on Friday, September 9th, 2016. The hearing was not held in the tribal court house. It was held in a conference room in the tribe's hotel-casino. Significantly, the underlying tribal action involves a suit made by the tribe on behalf of its hotel-casino against me. It seems the tribal court lacks independence from the casino-hotel.

*C: About Marston's refusal to disqualify himself*

23. During the September 9th hearing, Marston expressed his inclination to deny the motion because he had no financial interest that could be affected by the outcome of the tribal action, and because he was not a participant in the affairs of any party to the tribal action.

24. At the same hearing, I reiterated my belief that the tribal proceeding was being conducted in bad-faith against me, and that ample reason existed for Marston to disqualify himself.

25. Marston then issued an order denying my motion to disqualify him. In explaining his ruling, Marston stated that he had no "financial interest in … a party to the proceeding, or any other interest that could be substantially affected by

SECOND COMPLAINT BY JAMES ACRES AGAINST BLUE LAKE            5

the outcome of the proceeding." He continued that he also was "not an active participant in the affairs of any party to the action." *Exhibit 2,* Marston's Order Refusing Disqualification, p 7 lines 25 – 28.

26. There is no tribal appellate court, and so Marston's ruling on disqualification is final, and tribal remedies have been exhausted as to Marston's removal. *See Exhibit 3* for an email from the tribal court clerk stating there is no tribal appellate court.

27. Marston and his law partner David Rapport have represented Blue Lake since at least *Tillie Hardwick v United States* in 1983. *Exhibit 4,* p 2 line 1 names Marston and Rapport as attorneys in the action, and p 3 line 5 shows they represented Blue Lake Rancheria.

28. The legal relationship between Rapport and Marston and Blue Lake continues to this day. Rapport and Marston represents the tribe in *Blue Lake v Lanier,* 2:11-cv-01124-JAM-KJN.  Appeals in *Blue Lake v Lanier* (15-16340 and 15-16393) had docket activity as recently as September 14th, 2016.

29. Marston's firm's relationship with Blue Lake Rancheria would disqualify him from representing me as an attorney in the underlying tribal action. *Flatt v Superior Court,* 9 Cal.4th, 275, 283 – 286. *See also,* ABA Model Rules of Professional Conduct, Rule 1.10 "Imputation of Conflicts of Interest."

30. Judges have a fiduciary responsibility both to the public, and to the litigants before them.  A judge who "conceals material information from them is guilty of fraud." *United States v Holzer,* 816 F.2d 304, 307 (7th Cir. 1987), upholding conviction of corrupt Illinois county judge.

31. The fact that the Blue Lake Rancheria is a client of Marston's law firm in *Blue Lake v Lanier,* a suit for over $18,000,000, is a material fact in deciding whether or not Marston should be disqualified from presiding over a tribal court case in which the Blue Lake Rancheria is a litigant. This is because the relationship entails both involvement in Blue Lake's affairs, as well as financial considerations.

32. Marston deceitfully hid this fact when he claimed he shared no interests with any party in the underlying tribal action. *See* ¶ *24,* above. Instead, Marston had an obligation to reveal that his firm was actively representing Blue Lake Rancheria in federal court.

33. Rapport and Marston's involvement in the *Blue Lake v Lanier* action, and the firm's professional relationship with the tribe over the past three decades, is grounds to disqualify Marston as judge under Rules 7(c), 7(d), and 7(e)(3) of the tribe's rules of judicial conduct. *Exhibit 5,* Tribal Rules of Judicial Conduct, p 5.

34. Rapport and Marston's involvement in the *Blue Lake v Lanier* action, and the firm's professional relationship with the tribe over the past three decades, is grounds to disqualify Marston as judge under Canons 3(C)(1)(a)-(c) and (d)(iii) of the Code of Conduct for United States Judges.

35. Despite knowing of his firm's long-term and ongoing relationship with Blue Lake Rancheria, Marston fraudulently claimed at the September 9th hearing that nothing in the tribal or federal codes of judicial ethics disqualified him from presiding over the underlying tribal action.

///

36. Marston has a history of presiding in bad-faith as a tribal court judge. *Exhibit 6* sets forth two judgments from actions in the tribal court where Marston presided as judge, while his law partner David Rapport appeared as plaintiff's attorney for the tribe.[2]

37. Significantly, the law firm of Rapport and Marston is associated with the law firm of Boutin Jones in *Blue Lake v Lanier*. Boutin Jones is the firm representing Blue Lake in the underlying tribal action. And so, Marston is simultaneously associated as co-counsel with Boutin Jones in *Lanier,* while at the same time presiding over Boutin Jones as judge in the underlying tribal action.

*D: About the resolution of my tribal motion for judgment on the pleadings*

38. My motion for judgment on the pleadings in the underlying tribal action was also resolved at the September 9th hearing. The motion was premised upon the fact that the tribe failed to allege in the tribal complaint that the fraud allegedly committed by me occurred on the reservation. *Exhibit 1,* p 6 ¶ 34 alleges the fraud took place "at the time the Agreement was entered into," but neither the place nor the time that the agreement was "entered into" is specifically alleged.[3] This is key, since tribal jurisdiction is "cabined by geography." *Phillip Morris v King Mountain,* 569 F.3d 932, 938 (9th Cir. 2009).

39. Further, the fraudulent inducement claim against me would be too vague to be permitted either in California courts (*Hamilton v Greenwich Investors XXVI, LLC,* 195 Cal.App.4th 1602, 1614 (Cal. Ct. App. 2011), or federal courts (*Cafasso v General Dynamics,* 637 F. 3d 1047, 1054-1055 (9th Cir. 2011), as the

---

[2] I surmise these were unlawful detainer actions.
[3] The agreement required receipt, and acceptance of payment, for execution. *Exhibit 1,* p 12, "Execution." I cannot tell from the tribal court record when or where the tribe claims I defrauded them.

tribal complaint fails to state with particularity the "who, what, where, when, and how" of the alleged fraud.

40. At the September 9th hearing, and in response to my motion for judgment on the pleadings, Marston considered dismissing the tribal suit with leave to amend, in order that the tribe might competently allege its claims.

41. Instead, and as prelude to consideration of his jurisdiction, Marston decided to order a schedule of discovery and dueling briefs stretching out to 260 pages of argument, and six months of calendar time. *See Exhibit 7,* Marston's September 16th Order, pp 3 – 4 (¶ 2 and ¶¶ 5 – 7).

42. Marston's discovery order was made in bad-faith, with the goal of delaying a tribal court finding of jurisdiction for as long as possible, so as to stave off federal review.

## FIRST CLAIM FOR RELIEF

*(Declaratory relief finding bad-faith in Marston's fraudulent concealment of his relationship with Blue Lake Rancheria)*

43. I reiterate all allegations above.

44. Marston has a financial interest in his law firm's relationship with Blue Lake Rancheria, and through his law firm, Marston is an active participant in Blue Lake Rancheria's affairs.

45. Marston defrauded me when he represented that he had no relationship with Blue Lake Rancheria other than as a tribal judge.

///

46. I seek a declaratory judgment finding that Judge Marston's fraudulent statements, concealing the extent and nature of his relationship with Blue Lake Rancheria, are acts of outrageous bad-faith allowing me to petition for immediate federal relief.

## SECOND CLAIM FOR RELIEF
*(Declaratory relief finding bad-faith in Marston's failure to disqualify himself)*

47. I reiterate all allegations above.

48. Marston has a financial interest in his law firm's relationship with Blue Lake Rancheria, and through his law firm, Marston is an active participant in Blue Lake Rancheria's affairs.

49. Marston's relationship with Blue Lake Rancheria makes it impossible for him to preside as an impartial judge in the underlying tribal action.

50. I seek a declaratory judgment finding that Judge Marston's failure to disqualify himself from presiding in the underlying tribal action is an act of outrageous bad-faith allowing me to petition for immediate federal relief.

## THIRD CLAIM FOR RELIEF
*(Declaratory relief finding Marston's discovery order was made in bad-faith)*

51. I reiterate all allegations above.

52. Under federal law this Court is empowered to rule on the propriety of Blue Lake's jurisdiction over me once Blue Lake makes a finding that it has jurisdiction.

///

53. Marston's September 16th order, invoking 260 pages of briefing, ninety days of discovery, and a calendar stretching into spring of 2017, is calculated to avoid making a final determination of tribal jurisdiction for as long as possible, thus denying me access to federal relief.

54. I seek a declaratory judgment that Marston's September 16th order is a bad-faith effort by the tribal court to encourage a settlement favorable to the tribe.

## FOURTH CLAIM FOR RELIEF
*(Declaratory and Injunctive Relief against tribal jurisdiction)*

55. I reiterate all allegations above.

56. Marston's bad-faith conduct of the tribal proceedings allow this Court to consider whether tribal jurisdiction over me is appropriate.

57. I ask for declaratory relief finding the tribal court has no jurisdiction over me, for a permanent injunction against the tribe and its court (applied against Marston and his successors) from taking any further actions in the underlying tribal action C-15-1215LJM, and a permanent injunction against the tribe from renewing litigation in tribal court in any action based upon the same events as C-15-1215LJM.

///

///

///

## PRAYER FOR RELIEF

58. I request the Court grant the declaratory and injunctive reliefs described above.

59. I request any other relief the Court finds necessary or proper.

Respectfully Submitted September, 20th 2016

*/s/ James Acres*

James Acres